```
                   UNITED STATES DISTRICT COURT
                            FOR THE
                      DISTRICT OF VERMONT

David Anthony Donley,           :
        Plaintiff,[1]           :
                                :
    v.                          :   File No. 2:04-CV-241
                                :
State of Vermont,               :
        Defendant.              :
```

OPINION AND ORDER
(Papers 4, 6, 10 and 15)

Plaintiff David Donley, proceeding *pro se*, brings this action against the State of Vermont claiming that the State's family laws, including provisions related to child custody and child support, are constitutionally invalid. In his complaint, Donley states that he is suing on behalf of himself and a putative class of persons, all of whom are allegedly non-custodial parents residing in Vermont. As explained below, the Court takes judicial notice of the fact that nearly identical actions have been filed in other federal districts.

The State has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction,

---

[1] The caption of the complaint in this case names a putative class of "all persons similarly situated" as additional plaintiffs. As set forth below, the Court denies Donley's motion to certify a class. These persons, therefore, are not included in the Court's case caption.

or alternatively under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted. (Paper 10).  In support of its jurisdiction argument, the State cites the Eleventh Amendment, the Rooker-Feldman doctrine, standing, and the "domestic relations exception."  Id.  The State further argues, under Rule 12(b)(6), that it is not susceptible to suit under 42 U.S.C. § 1983, and that Donley's complaint, which contains few specific facts and is largely generalized to all non-custodial parents, fails to allege sufficient facts to support his claims.

For the reasons set forth below, the State's motion to dismiss (Paper 10) is GRANTED, all remaining motions (Papers 4, 6 and 15) are DENIED, and this case is DISMISSED for lack of jurisdiction.

## Background

Donley has filed a 42-page, verified complaint on behalf of himself and others in an effort "to vindicate and restore various rights of the Plaintiffs secured under federal law . . . ."  (Paper 1 at 1). Specifically, the "case involves applications of family law in a general nature, wherein rightful custody of

minor children is in dispute between natural parents . . . ." Id. at 2.  The complaint alleges that the State is responsible for "thwarting the rightful and lawful conclusions of due process during any such child custody proceedings held within its own courts of law."  Id.

In essence, the complaint alleges that state family laws, including provisions for child custody and child support payments, violate the non-custodial parent's federal rights.  The complaint asserts this claim and related claims in six separate counts.  Count I, entitled "Gross Negligence and Reckless Disregard for Duties Owed in Custody," claims that the "best interest of the child" standard is impermissibly vague.  Count I also alleges that custody should be determined according to a strict scrutiny standard, and that parents should only be deprived of custody for a "strongly compelling reason." Id. at 20.

Count II of the complaint, entitled "Refusals to Enforce and Support Lawful Parenting Time," claims in part that while depriving parents of equal access to their children is unlawful, this wrong is compounded by the fact that the custody and visitation schedules

mandated by the State are poorly enforced. <u>Id.</u> at 22-24. In Count III, Donley claims that there is a conspiracy among the states to enforce the allegedly unlawful custody orders of its fellow states. <u>Id.</u> at 24-26. Count IV charges, in part, that the states have no right to order child support, since it is "the right of any fit natural parent to best determine the appropriate amount of spending upon his or her children without undue interference by the state . . . ." <u>Id.</u> at 26-27. In Count V, Donley objects to the fact that custodial parents are taxed differently than non-custodial parents. Finally, Count VI of the complaint alleges broadly that the State has "engaged in a general pattern of serious mismanagement of society and taxation." <u>Id.</u> at 33.

Donley claims that he is bringing this action as a person who has "conceived one or more natural children," and that the existence of such child or children "either does, or could, give present or future rise to any legal or equitable proceeding in any court for the payment, by such plaintiff, of any form of child support." <u>Id.</u> at 4. Donley also claims that he and a putative class of plaintiffs have suffered "grievous and irreparable losses

at the hand of the Defendants, due to continuing unlawful deprivations of relationships with their minor children . . . ." Id. at 8.  The complaint seeks both damages and injunctive relief, including the "restoration/elevation to equal custodial status for all 'fit' (no proven abuse/neglect of kids) noncustodials," and the abolishment of court-ordered child support "in most cases."  Id. at 38-41.[2]

---

[2] The State requests that the Court take judicial notice of numerous opinions from other jurisdictions that have dismissed complaints similar to the one presented here.  (Paper 10 at 5, citing Collins v. Kentucky, Docket No. 04-CV-66-JMH, Mem. Opinion and Order (E.D. Ky. Oct. 22, 2004) (dismissing for lack of standing and insufficient pleading), Weiss v. Alabama, Docket No. 2:04cv876-A, Mem. Opinion and Order (M.D. Ala. Nov. 15, 2004) (dismissing based upon Eleventh Amendment immunity), and Urbank v. New Jersey, Docket No. 04-4557(MLC) (D.N.J. Oct. 25, 2004) (ordering plaintiff to show cause why case should not be dismissed under Rooker-Feldman doctrine or Younger abstention)); (Paper 13, Attachments); (Paper 17, Attachments).  The State also notes that Donley's complaint is a largely "pre-packaged complaint posted on a website that has been promoting, and recruiting plaintiffs for, identical *pro se* lawsuits in federal court in each of the fifty states." (Paper 10 at 2).

On a motion to dismiss, a Court must accept the facts as stated in the complaint, but may also consider facts of which it may take judicial notice. See Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).  Moreover, when a motion to dismiss challenges a complaint on grounds of subject matter jurisdiction, review of facts extrinsic to the complaint is appropriate, and the motion need not be converted to one for summary judgment.  See Phifer v. City of New

Discussion

I. Motion to Dismiss Standard

On a motion to dismiss, the Court must read the plaintiff's complaint with generosity. See Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). Taking the allegations in the complaint as true, the court must construe the complaint in the light most favorable to the plaintiff, and must draw all inferences in the plaintiff's favor. See Warth v. Seldin, 422 U.S. 490, 502 (1975); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989). The complaint must not be dismissed unless

---

York, 289 F.3d 49, 55 (2d Cir. 2002); Kamen v. American Telephone & Telegraph Co., 791 F.3d 1006, 1010-11 (2d Cir. 1986). Court orders and published websites are both matters of which courts have taken judicial notice in certain circumstances. See, e.g., Heathcote Assocs. v. Chittenden Trust Co., 958 F. Supp. 182, 185 (D. Vt. 1997) (taking judicial notice of state court order of which plaintiff had notice); Hotel Employees and Restaurants Union v. City of New York Dep't of Parks and Recreation, 311 F.3d 534, 459 (2d Cir. 2002) ("may be appropriate" to take judicial notice of defendant's website where authenticity of website is not disputed).
   In this case, Donley does not dispute that his complaint originated from a website, or that actions have been filed in other federal courts and that some courts have issued rulings in those cases. This Court, therefore, will take judicial notice of these facts. The Court notes, however, that its decision in this case is not affected by either the decisions of its sister courts or the fact that Donley's complaint was largely copied from a website.

"'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

There is an important difference between disposing of a case on a motion to dismiss and resolving the case later in the proceedings, for example by summary judgment. See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998). On a motion to dismiss, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." Id. (citations and internal quotation marks omitted). Moreover, *pro se* complaints are to be construed more liberally than complaints drafted by trained attorneys. Haines v. Kerner, 404 U.S. 519, 520 (1972).

Before the Court can consider the merits of the plaintiff's action, it must have subject matter jurisdiction. "The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception, for jurisdiction is power to declare

the law" and "without jurisdiction the court cannot proceed at all in any cause." Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 94-95 (1998) (citations omitted). When a federal court's jurisdiction has been called into question, that jurisdiction must be shown affirmatively, and cannot be established through favorable inferences in the pleadings of the party asserting it. See Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citation omitted). "Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3); see Shipping Financial Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

II. Sovereign Immunity

The Eleventh Amendment to the United States Constitution bars suits by private citizens against a state or its agencies in federal court unless the state has waived or Congress has overridden the state's sovereign immunity. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984). The text of the

Amendment provides:

> The Judicial Power of the United States shall not . . . extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State.

The Eleventh Amendment does more than limit the jurisdiction of Article III courts by barring such courts' jurisdiction over a State.  See Close v. New York, 125 F.3d 31, 39 (2d Cir. 1997).  It has long been understood "'to stand not so much for what it says, but for the presupposition . . . which it confirms.'" Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996) (quoting Blatchford v. Native Village, 501 U.S. 775, 779 (1991)).  This presupposition is that: (1) each State in the federal system is a sovereign entity, and (2) "that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent."  Seminole Tribe, 501 U.S. at 779 (internal quotations and citations omitted); see also Alden v. Maine, 527 U.S. 706, 713 (1999) ("State's immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the Constitution's ratification, and which they retain today . . . .").  Moreover, the

9

Eleventh Amendment bars the federal court's jurisdiction over a state regardless of the nature of the requested relief.  <u>Seminole Tribe</u>, 517 U.S. at 58 ("we have often made clear that the relief sought by a plaintiff suing a State is irrelevant to the question of whether the suit is barred by the Eleventh Amendment); <u>see also</u> <u>Pennhurst</u>, 465 U.S. at 102.

A state can only waive its sovereign immunity by unequivocal expressions or actions.  <u>See</u> <u>id.</u> at 99.  Similarly, Congress can waive state sovereign immunity only where it has unequivocally expressed its intent to abrogate the immunity and where it acted pursuant to a valid exercise of power.  <u>See</u> <u>Seminole Tribe</u>, 517 U.S. at 55.  In this case, it is clear that neither Vermont nor Congress has waived Vermont's sovereign immunity with respect to constitutional claims against state agencies or officials.

As to Vermont law, the Vermont Tort Claims Act specifically reserves the state's Eleventh Amendment immunity.  <u>See</u> 12 V.S.A. § 5601(g).  Donley cites no statutory authority in Vermont law that waives sovereign immunity for this type of case.

With respect to Donley's claims under federal law, none of the laws or statutes he cites abrogates state sovereign immunity.  Donley first cites 18 U.S.C. §§ 241 and 242, each of which is a criminal statute that does not even create a private right of action.  (Paper 1 at 12); see Powers v. Karen, 768 F. Supp. 46, 51 (E.D.N.Y. 1991), aff'd 963 F.2d 1522 (2d Cir. 1992).  He next cites a series of civil rights statutes, including 42 U.S.C. §§ 1981, 1985, 1986, 1988 and 1994.  (Paper 1 at 12-15). While these statutes provide causes of action for violations of federal constitutional rights, they do not contain waivers of state sovereign immunity. See, e.g., Ellis v. Univ. of Kansas Med. Ctr., 163 F.3d 1186, 196 (10th Cir. 1998) (§ 1985 does not abrogate Eleventh Amendment immunity); Williams v. Bennett, 689 F.2d 1370, 1376-77 (11th Cir. 1982) (state board of corrections immune from damage suits brought under §§ 1983, 1985, and 1986), cert. denied, 464 U.S. 932 (1983); Sessions v. Rusk State Hosp., 648 F.2d 1066, 1069 (5th Cir. 1981) (§ 1981).³  Donley also cites 28 U.S.C. §§ 1443 and 1657.

---

³ Although there is some authority for granting attorney's fees against state agencies under § 1988, such an award would require success on substantive grounds, and therefore will not be at issue here. See Hutto v.

11

As the State properly argues, these "are procedural provisions and, by their own terms, do not abrogate a state's Eleventh Amendment immunity." (Paper 10 at 7, citing <u>Wolpoff v. Cuomo</u>, 792 F. Supp. 964, 967 (S.D.N.Y. 1992) and <u>Carreras Roena v. Camara De Comerciantes Mayoristas, Inc.</u>, 440 F. Supp. 217, 219 (D.P.R. 1976)).

Finally, Donley cites a host of federal statutes which, he claims, "include . . . binding rules of law upon the several States." (Paper 1 at 15). The complaint appears to cite these statutes in an effort to show that family law is not strictly a matter of state law. <u>Id.</u> at 16. The complaint does not, however, allege that Vermont has violated these laws, or that the cited statutes have abrogated state sovereign immunity.

In response to the State's assertion of immunity under the Eleventh Amendment, Donley argues that the Eleventh Amendment is irrelevant, since the language of the Amendment merely provides protection against suit in the State's own courts without its consent. (Paper 12 at 4). The Supreme Court has explained that "[t]o rest on

---

<u>Finney</u>, 437 U.S. 678, 693-95 (1978) (attorneys fees properly awarded under section 1988 against state Department of Corrections in civil rights suit seeking injunctive relief).

the words of the Amendment alone would be to engage in the type of ahistorical literalism we have rejected in interpreting the scope of the States' sovereign immunity . . . ." Alden, 527 U.S. at 730. (citations omitted).

> The Eleventh Amendment confirmed rather than established sovereign immunity as a constitutional principle; it follows that the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design.

Id. at 728-29.  Those "postulates" include the States' rights as sovereigns not to be sued in federal court. Id. at 729.  Accordingly, Donley's argument that the Eleventh Amendment does not apply to suits filed in federal court is misplaced.

Donley further contends that Eleventh Amendment immunity has been abrogated under 42 U.S.C. § 2000d-7. (Paper 12 at 3-4).  This argument is also without merit, since Donley's suit is not brought pursuant to any of the statutes cited in § 2000d-7.  Title 42 U.S.C. § 2000d-7 waives state sovereign immunity for violations of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, "or the provision of any other Federal statute

prohibiting discrimination by recipients of Federal financial assistance." Again, the complaint in this case is not brought pursuant to any of the cited statutes. Nor does it allege a cause of action under a federal statute prohibiting discrimination by recipients of federal financial assistance.

In sum, the State of Vermont is immune from suit in this Court, as Donley has failed to show either waiver by the State or an applicable abrogation of Eleventh Amendment immunity by Congress. His complaint must, therefore, be DISMISSED for lack of subject matter jurisdiction.

III. *Rooker-Feldman* Doctrine

The State further argues that this Court lacks subject matter jurisdiction by virtue of the Rooker-Feldman doctrine. (Paper 10 at 8-10). The Rooker-Feldman doctrine provides that "inferior federal courts have no subject matter jurisdiction over suits that seek direct review of judgments of state courts, or that seek to resolve issues that are 'inextricably intertwined' with earlier state court determinations." Vargas v. City of New York, 377 F.3d 200, 205 (2d Cir. 2004) (citing

14

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). Donley responds to the State's argument by noting that his complaint does not attack a single state judgment, but is instead "a unilateral attack upon the unconstitutional practice or policy committed by the defendant." (Paper 12 at 8).

The complaint claims that Donley, as well as the other members of his putative class, have each "been previously adjudicated . . . as a 'noncustodial parent' . . ." by a Vermont court. (Paper 1 at 5). As a non-custodial parent, Donley claims that he has suffered "grievous and irreparable losses at the hands of the Defendant" as direct result of, *inter alia*, state court custody and child support orders. (Paper 1 at 8). Indeed, it appears from the complaint that a fundamental goal of this suit is to overturn existing state court orders and have custody, child support and other related matters determined under a new body of family law. See, e.g., id. at 38, 39 ("Plaintiffs pray this Court for abolishment of forced/court-ordered child support . . . .").

The complaint also seeks relief that may be unrelated to state court decisions. For example, the complaint asks the Court to prohibit custodial parents from moving 60 miles away from the original family home, and to direct the establishment of "neutral visitation exchange centers." Id. at 38-40. Nonetheless, to the extent that the complaint asks this Court to review state court orders, the Rooker-Feldman doctrine applies and the Court lacks subject matter jurisdiction over those claims.

IV. Motion for Class Certification

Because the Court lacks subject matter jurisdiction over Donley's claims, his motion for class certification is moot. Moreover, the fact that Donley is proceeding *pro se* bars him from acting as a class representative. See Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("because pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause"). His motion for class certification and to appoint class counsel (Paper 4) is, therefore, DENIED.

V. Request for Three-Judge Panel

Donley has also requested a three-judge panel.

(Paper 6). The circumstances requiring a three-judge panel are limited by statute.  See 28 U.S.C. § 2284(a). "A district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body."  Id. The instant suit does not satisfy any of these conditions.  The request for a three-judge panel (Paper 6) is, therefore, DENIED.

VI.   Motion to Intervene and/or for Joinder

The final motion pending before the Court is the motion of George J. Malico to intervene as a plaintiff and/or to be joined as a necessary party.  (Paper 15). Because the Court has no subject matter jurisdiction to hear this case, Malico's motion is DENIED as moot.

### Conclusion

For the reasons set forth above, the State's motion to dismiss (Paper 10) is GRANTED.  Donley's motions for certification of class (Paper 4) and request for a three-judge panel (Paper 6), and Malico's motion to intervene and/or for joinder (Paper 15) are each DENIED.  This case

17

is DISMISSED for lack of jurisdiction.

    Dated at Burlington, in the District of Vermont, this 8th day of February, 2005.

                      /s/ William K. Sessions III
                      William K. Sessions III
                      Chief Judge, United States District Court