## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MICHAEL JUDE PETTIT, individually, and
on behalf of all persons similarly situated,

       Plaintiff,

vs.                                                                                                                  No. CIV 04-1063 JB/RHS

STATE OF NEW MEXICO,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss Complaint, filed November 1, 2004 (Doc. 10). The Court held a hearing on this motion on December 7, 2004.[1] The primary issues are whether the Eleventh Amendment precludes Plaintiff Michael Jude Pettit's case directly against the Defendant State of New Mexico and whether Pettit has standing to bring this federal lawsuit. Because Pettit has not shown that the State has consented to his suit in federal court or that Congress has abrogated the State's immunity for his claims, and because Pettit failed to allege facts indicating he has been injured in fact, the Court will grant the State's motion and dismiss Pettit's Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Pettit alleges that he is a non-custodial parent. See Complaint ¶ 15, at 5, filed September 20, 2004 (Doc. 1). Pettit, acting *pro se*, attempts to bring his action against the State on behalf of all other parents who have had a judge of a New Mexico court adjudicate them as the non-custodial

---

[1] Pettit did not appear at the hearing, either in person or telephonically. The State represented that there was an outstanding warrant for Pettit on an automobile theft charge. See Transcript of Hearing at 2:12-23 (December 4, 2004).

parent of their child or of their children.  Pettit's Complaint inserts his name as the Plaintiff and the State of New Mexico as Defendant into a form complaint posted on a website of the "Indiana Civil Rights Council," which has been promoting and recruiting plaintiffs to bring this identical *pro se* lawsuit in federal court in each of the fifty states.  See Indiana Civil Rights Council, Class-Actions!, http://www.indianacrc.org?classaction.html (visited Dec. 17, 2004); Torm L. Howse, President, Indiana Civil Rights Council, Examples, http://www.ffvisual.com/ncpshared/examples.html (visited Dec. 17, 2004).  Although the Complaint does not allege the class' size or the estimated amount of damages sought, the website estimates the purported class in New Mexico to consist of some 70,294 persons and estimates the damages sought at $210,882 billion.  See Class-Action!, http://www.indianacrc.org/classaction.html (visited December 17, 2004).[2]

In the Complaint, Pettit alleges that the State of New Mexico has violated several amendments of the United States Constitution and various federal statutory provisions within the context of child custody and support proceedings.  See Complaint ¶ 39, at 11-15.  Pettit's contentions allegedly stem from a parent's fundamental right to make decisions concerning their children's care, custody, and control.  See id. ¶ 44-48, at 17.  Pettit asks the Court to certify him and other non-custodial parents as a class this litigation's purposes and that a three-judge panel be appointed.  See Motion to Certify Class Action and Appointment of Counsel, filed September 20, 2004 (Doc. 4); Motion for Order for a Three Judge Panel, filed September 20, 2004 (Doc. 5).  Pettit has also moved for consolidation and

---

[2] When the Court visited the website on December 17, 2004, the "Class Coordinator" was listed as Robert Wood.  Under the "CASE INFO" section, however, it lists "Pettit, et al., v. New Mexico, #CIV-04-1063JB-RHF, Judge Browning" as the pending case.  The Court also notes that, although Pettit's complaint does not list the amount of damages sought, in Pettit's Request for Default Judgment, filed on November 1, 2004, he lists the amount claimed as "$210.882 BILLION plus costs."  Doc. 10.

transfer of this cause by the Judicial Panel on Multi-District Litigation. See Notice of Motion for Consolidation and Transfer by the Judicial Panel on Multi District Litigation, filed September 20, 2004 (Doc. 3).[3]

Perhaps because Pettit has inserted his name into a form complaint originally prepared elsewhere, he does not provide details on his pending state-court divorce and child custody proceedings. Because they form the basis and background for Pettit's grievances, and because they may be relevant to the question of the Court's jurisdiction, the State asks the Court to take judicial notice of the decrees[4] in the following proceedings to which Pettit was or is a party:

1. Celeste Pettit v. Michael Pettit, D-1113-DV-200200395 (Gallup District Court). The complaint alleges domestic violence, several violations, and seeks a TRO. The case was consolidated with DM 2003-7-V.

2. Celeste Pettit v. Michael Pettit, D-1113-DM-2003-0007 (Gallup District Court). The complaint seeks divorce with custody. The case was transferred to Curry County on 2/27/04.

---

[3] Although Pettit has already moved for transfer to the Judicial Panel on Multi-District Litigation, this Court may still resolve the State of New Mexico's Motion to Dismiss. See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1337-38 (9th Cir. 2001)(discussing the district court's order to dismiss for lack of standing while a motion to consolidate was pending before the Judicial Panel on Multi-District Litigation).

[4] The State's exhibits do not establish fully the detail's listed in the text about Pettit's cases. See Defendant's Motion to Dismiss at 2-3; Pettit v. Pettit, Petition for Divorce, No. DM 2003-7-V (Jan. 10, 2003); Pettit v. Pettit, Order Petition to Transfer Dissolution of Marriage Proceedings from the District Court of McKinley County to the District Court of Curry County, No. D-0905-DM-2004-00175 (March 22, 2004); Pettit v. Pettit, Order on Motion for Change of Venue, No. DM-2003-7-V (Feb. 27, 2004); Pettit v. Pettit, Order Accepting Transfer of McKinley County Petition for Dissolution of Marriage to Curry County, No. D-0905-DM-2004-00175 (Mar. 25, 2004); Pettit v. Pettit, No. D-0905-DM-200400175, Notice of Hearing on the Merits (July 29, 2004)(setting hearing date for December 1, 2004). The Court, therefore, will take judicial notice of these state proceedings, but not all of the representations that the State makes about them.

3. <u>Celeste Pettit v. Michael Pettit and Linda Latimer</u>, D-905-DV-200300025 (Clovis District Court). This is domestic violence petition. The state court dismissed the case with prejudice on 2/10/03.

4. <u>Michael Pettit v. Celeste Pettit</u>, D-911-DV-200300120 (Portales District Court). This is domestic violence petition. The state court dismissed the petition on 12/11/03.

5. <u>Celeste Pettit v. Michael Pettit</u>, D-905-DV-200300431 (Clovis District Court). Celeste Pettit filed a domestic violence petition; the state court entered a "no contact" TRO. The order expired 6/11/04.

6. <u>Celeste Pettit v. Michael Pettit</u>, M-35-CV-200300240 (Gallup Magistrate Court). A civil judgment was entered in favor of Celeste on 3/17/03. The civil judgment was not satisfied.

7. <u>Michael Pettit v. Celeste Pettit</u>, D-911-DM-200400047 (Portales District Court). The complaint sought a divorce with custody. The court held a show cause hearing on 4/7/04. Although the case is still open, nothing has occurred in this case since that hearing.

8. <u>Celeste Pettit v. Michael Pettit</u>, D-905-DM-200400175 (Clovis District Court). The complaint sought divorce with custody. The state court set an emergency motion to suspend visitation and contact for a hearing on December 1, 2004.

The State moves pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and D.N.M. LR-Civ. 7. The State called the telephone number for Pettit listed on the United States District Court's website, but Pettit did not return the call to state his position. Pettit has not filed a response, but on October 6, 2004, Pettit filed a "Memorandum of Law Regarding State Immunity" (Doc. 9). Given the nature of the motion, and Pettit's Memorandum of Law Regarding State Immunity, the Court assumes that Pettit opposes the motion.

## LAW REGARDING RULE 12(b)(1)

The plaintiff has the burden of establishing jurisdiction, including demonstrating that he meets the constitutional requirements for standing. See Nova Health Systems v. Gandy, 388 F.3d 744, 749 (10th Cir. 2004)("As an irreducible constitutional minimum, a plaintiff must satisfy three criteria in order for there to be a 'case or controversy' that may be resolved by the federal courts. . . . As the party seeking to invoke federal jurisdiction, the plaintiff . . . has the burden of establishing each of [the constitutional elements] of Article III standing.")(citing Lujan v. Defenders of Wildlife, 504 U.S. at 660-61).

With respect to motions to dismiss for lack of subject matter jurisdiction under rule 12(b)(1), the United States Court of Appeals for the Tenth Circuit has held that motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002), cert. denied, 538 U.S. 999 (2003). These two forms of attacks differ. On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion -- the court must consider the complaint's allegations to be true. See Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir.), cert. denied, 454 U.S. 897 (1981). But when the attack is factual,

> the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d at 412-13 (quoting Mortenson v. First Fed. Savings and Loan Ass'n.,

549 F.2d 884, 891 (3d Cir. 1977)). Accordingly, "[i]n assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." Colonial Pipeline Co. v. Collins, 921 F.2d 1237, 1243 (11th Cir. 1991)(citing Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir.1988) and Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981), cert. denied, 454 U.S. 897 (1981)).

### LAW REGARDING RULE 12(b)(6)

In a ruling on a motion to dismiss under rule 12(b)(6), the court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Housing Auth. of the Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991). The question is not whether the plaintiff will ultimately prevail, but whether the allegations entitle the plaintiff to offer evidence to support his claim. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that he has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). Ultimately, the court cannot dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### LAW REGARDING THE ELEVENTH AMENDMENT

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects

of any Foreign State." U.S. Const. amend. XI. The Supreme Court of the United States has long "'understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms.'" Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000)(quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996), in turn quoting Blatchford v. Native Village of Noatak, 501 U.S. 775, 779 (1991)). According to the Supreme Court:

> That presupposition, first observed over a century ago in Hans v. Louisiana, 134 U.S. 1 . . . (1890), has two parts: first, that each State is a sovereign entity in our federal system; and second, that "'[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent,'" id., at 13 . . . (emphasis deleted), quoting The Federalist No. 81, p. 487 (C. Rossiter ed. 1961)(A. Hamilton). See also Puerto Rico Aqueduct [&] Sewer Authority [v. Metcalf & Eddy, Inc., 506 U.S. 139,] 146 [(1993)]("The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity"). For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States "was not contemplated by the Constitution when establishing the judicial power of the United States." Hans [v. Louisiana, 134 U.S.] at 15.

Seminole Tribe of Fla. v. Florida, 517 U.S. at 54; id. at 54 n.7 (collecting cases)(footnote omitted).

The Supreme Court reaffirmed in Kimel v. Fla. Bd. of Regents "that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." 528 U.S. at 73. Thus, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Employees of the Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare, 411 U.S. 279, 280 (1973).

The Supreme Court has held: "It is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)(citations omitted). The Eleventh Amendment thus does not only bar suits for money damages. It bars suits

for any relief.

42 U.S.C. § 2000d-7 provides:

A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7(a)(1).

## LAW ON STANDING

"Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies." United States v. Colo. Supreme Court, 87 F.3d 1161, 1164 (10th Cir. 1996)(citing U.S. Const. art. III, § 2, cl. 1 and Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982)). "The case or controversy limitation requires that a plaintiff have standing." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-61(1992)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Id. (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. at 498.

1. **Constitutional Requirement: Injury In Fact.**

Under the constitutional requirements, "[a] plaintiff has standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision." United States v. Colo. Supreme Court, 87 F.3d at 1164 (citing Lujan v. Defenders of Wildlife, 504 U.S. at 559-61).

The United States Court of Appeals for the Tenth Circuit has explained "injury in fact" as follows:

> An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. [Lujan v. Defenders of Wildlife, 504 U.S. at 559-61.] These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." Id. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" Id. at 561 . . . (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 . . . (1990))."

United States v. Colo. Supreme Court, 87 F.3d at 1164-65 (10th Cir. 1996).

The Tenth Circuit has noted that the Supreme Court has "required a heavy burden of pleading in order to meet the standing requirements, i.e., that the complainant must clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Citizens Concerned for Separation of Church and State v. City and County of Denver, 628 F.2d 1289, 1295-96 (10th Cir. 1980). As the Supreme Court of the United States has noted:

> The party invoking federal jurisdiction bears the burden of establishing these elements. . . . Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'

See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)(quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990))(internal citations omitted). "The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have 'alleged such a personal stake in

the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" Citizens Concerned for Separation of Church and State v. City and County of Denver, 628 F.2d 1289, 1295-96 (10th Cir. 1980) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

**2.      Prudential Limitation: Domestic Relations Exception.**

The prudential limitations on standing, on the other hand, "encompass[] 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" Elk Grove Unified Sch. Dist. v. Newdow, __ U.S. __, 124 S.Ct. 2301, 2309 (2004)(quoting Allen v. Wright, 468 U.S. 737, 751(1984)).  One of these prudential limitations, the "domestic relations exception," arises out of the belief that "in general it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts." Id.  As the Supreme Court of the United States explained:

> One of the principal areas in which this Court has customarily declined to intervene is the realm of domestic relations. Long ago we observed that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." In re Burrus, 136 U.S. 586, 593-594 . . . (1890).  See also Mansell v. Mansell, 490 U.S. 581, 587 . . . (1989) ("[D]omestic relations are preeminently matters of state law"); Moore v. Sims, 442 U.S. 415, 435 . . . (1979) ("Family relations are a traditional area of state concern"). So strong is our deference to state law in this area that we have recognized a "domestic relations exception" that "divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703 . . . (1992). . . . [W]hile rare instances arise in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue, see, e.g., Palmore v. Sidoti, 466 U.S. 429, 432-434 . . . (1984), in general

> it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts.

Elk Grove Unified Sch. Dist. v. Newdow, 124 S.Ct. at 2309.

In regard to standing of a class representative in a class action lawsuit, the court must determine whether the proposed class representative has suffered adequate injury as well, thereby meeting the requisite standing requirements:

> An appropriate application of standing in class suits necessitates an inquiry into whether the class members have been injured by defendant's conduct, thereby presenting a 'live' case, as well as whether the representative party himself has been injured so that he has a sufficiently direct interest to assure adequacy of representation. As long as the representative parties have a direct and substantial interest, they have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.
>
> In sum, then, to avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention. But this requisite of an injury is not applied too restrictively.

C. Wright & A. Miller, M. Kane, 7B Fed. Prac. & Proc. Civ.2d § 1785.1 (2004). The requirement that a class representative have standing independent of the group relates to another prudential limitation on federal court jurisdiction: "'[T]he plaintiff . . . cannot rest his claim to relief on the legal rights or interests of third parties." Warth v. Seldin, 422 U.S. at 499.

**3.    Rooker-Feldman Doctrine.**

"Under 28 U.S.C. § 1257, 'federal review of state court judgments can be obtained only in the United States Supreme Court.'" Kenmen Eng'g v. City of Union, 314 F.3d 468, 473 (10th Cir. 2002). Federal courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486

(1983). This doctrine, know as Rooker-Feldman, "prohibits a lower federal court from considering claims actually decided by a state court, . . . and claims 'inextricably intertwined' with a prior state-court judgment. . . ." Kenmen Eng'g v. City of Union, 314 F.3d at 473 (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. at 483 n.16 and Rooker v. Fid. Trust Co., 263 U.S. 413, 415-16 (1923)). As the Tenth Circuit explained:

> *Rooker-Feldman* precludes "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994).

Kenmen Eng'g v. City of Union, 314 F.3d at 473. The Tenth Circuit has interpreted the Rooker-Feldman doctrine to encompass state decisions from the intermediate, as opposed to the highest, state court, see id., as well as state decisions that are not "final," id. at 474. "Under *Rooker-Feldman*, 'lower federal courts possess no power whatever to sit in direct review of state court decisions.' . . . This prohibition extends to all state-court decisions--final or otherwise." Id. at 474-75.

## ANALYSIS

The Court has spent considerable time reviewing Pettit's 150-paragraph, 42-page Complaint, and it is very difficult to understand. The Eleventh Amendment bars most, if not all, of his Complaint. Other jurisdictional doctrines bar whatsoever may survive Eleventh Amendment hurdles.[5]

### I. THE ELEVENTH AMENDMENT BARS FEDERAL JURISDICTION OVER PETTIT'S CLAIMS.

---

[5] The State supplied the Court will authority from other courts that have addressed this form complaint. See Defendant's Notice of Supplemental Authority, filed December 7, 2004 (Doc. 22). Each of these courts reached a similar conclusion. See Collins v. Commonwealth of Kentucky, No. 04-CV-66-JMH, at 1 (E.D. Ky. Nov. 19, 2004); Rohling v. State of New York, No. 1:04-CV-1083 (GLS)(DRH), at 6 (N.D.N.Y. Nov. 15, 2004); Weiss v. State of Alabama, No. 2:04cv876-A, at 5 (M.D. Ala. Nov. 15, 2004); Urbank v. State of New Jersey, No. 04-4557, at 4 (D.N.J. Oct. 25, 2004).

Although the present case involves a suit brought by a citizen against his own state, the Supreme Court has established that a citizen cannot, under the Eleventh Amendment, sue his or her own state without the State consenting to such a suit.  Moreover, Pettit has sued the State directly. He must therefore find some consent or congressional abrogation of immunity under the Fourteenth Amendment.

Pettit seeks to find a lack of immunity in various congressional acts.  Although Pettit provides a lengthy list of federal statutes, he does not specify whether any of these statutes abrogated sovereign immunity.  Although Pettit alleges that 42 U.S.C. § 2000d-7 abrogates the State's sovereign immunity in this case, he does not appear to be suing under any of statutes listed in § 2000d-7(a)(1).  See Complaint ¶ 39, at 11-15.  Moreover, even if Congress abrogated New Mexico's sovereign immunity in any of the statutes referenced in Pettit's complain, Pettit fails to allege that New Mexico has violated that particular statute as to him in this case.  Listing dozens of federal statutes, as Pettit does in paragraphs 18, 39, and 40 of the Complaint, is insufficient to state a claim or to establish jurisdiction in the face of the State's sovereign immunity under the Eleventh Amendment.[6]

Pettit seems to suggest that a state merely taking federal money under any federal statute abrogates any immunity that the state may have previously enjoyed.  The Court does not doubt that the State receives federal financial assistance for many state-run programs and activities.  See 42 U.S.C. § 2000d-4a.  Indeed, it may be true, as Pettit argues, that the State has willingly, and even

---

[6] Even if Pettit were to identify a specific federal statute that the State has violated and the violation of which has caused him injury in fact, he would also have to establish that Congress has either created a cause of action and provided a remedy, or that the Court should imply one.  Pettit makes no effort to undertake this analysis.

aggressively, sought after and received numerous forms of federal financial assistance in the way of grants, matching funds, stipends, and the like in regards to an entire plethora of state-run programs and services. The Court will assume that the State directly invests some of that federal money into its state judicial and other proceedings related to domestic relations actions, specifically funding various aspects of its state judicial systems, state judges, state prosecutors, state child protection services, state domestic violence shelters, state counselors, state guardian *ad litems*, and many other aspects of domestic relations and juvenile proceedings. The Court will also assume that there are federal statutes providing appropriations and distributions for such federal monies, and requiring the states to waive immunity for committing violations of federal law, particularly of Title VI of the Civil Rights Act of 1964, which prohibits, among other things, any discrimination and/or denial of the benefits of all such programs or services.

Pettit has not, however, pointed to any federal statute that broadly mandates a state receiving federal funds will no longer be immune under the Eleventh Amendment if it discriminates against citizens in regards to race, color, ethnicity, sex, gender, religion, or age, or it interferes with, or fails to protect, the civil and constitutional rights of any citizen. At best, federal law requires that the plaintiff allege a violation of the specific program or activity receiving federal money. Here, Pettit has not done so. While he generally talks about violations of due process, of equal protection, and of other federal rights and guarantees for all United States citizens, he has not with any specificity alleged a violation of a federal statute.

Pettit is not entitled to a trial about his federal violations unless he establishes that the Court has jurisdiction over his case. Here, Pettit has not met his burden to establish that the Court has jurisdiction to hear his claims under the Eleventh Amendment. The Court will dismiss Pettit's claims

against the State pursuant to rule 12(b)(6).

## II.   LACK OF STANDING DEPRIVES THE COURT OF JURISDICTION.

Although the Eleventh Amendment requires dismissal of some, if not all, of Pettit's claims, the Court also lacks jurisdiction over Pettit's claim because he has failed to establish that he has standing over this particular case and controversy. The Court bases this conclusion on the constitutional requirements for -- and prudential limitations on -- federal court jurisdiction.

Pettit fails to establish that he has suffered an injury in fact, a requirement under the Constitution. Pettit's complaint is devoid of facts specific to his case on which the Court can hold that he has suffered a concrete injury to a legally protected interest. By failing to provide even "general factual allegations of injury resulting from the defendant's conduct," Pettit, at the pleading stage, fails to establish he has standing. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. at 889. Moreover, because Pettit does not offer any allegations that New Mexico's conduct has injured him, he does not establish that he is an adequate representative of the class, even if others may have been injured.

In addition, the domestic relations exception precludes the Court from exerting jurisdiction over some, if not all, of Pettit's claims. His claims would require the Court to make determinations about divorce, alimony and child custody decrees, a realm of the law that is left to the state courts. The Court cannot exercise jurisdiction over most, if any, of Pettit's claims.

## III.  THE ROOKER-FELDMAN DOCTRINE PRECLUDES THE COURT FROM REVIEWING THE STATE COURT PROCEEDINGS.

Most, if not all, of Pettit's allegations apparently stem from state court divorce and custody proceedings. The Rooker-Feldman doctrine prohibits federal courts from acting as appellate courts to state court proceedings. This Court, therefore, will not exercise jurisdiction over Pettit's claims

that require a direct review of the state court decisions, currently pending or otherwise decided.

**IT IS ORDERED** that the Defendant's Motion to Dismiss Complaint is granted and the Plaintiff's Complaint is dismissed.[7]

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Michael Jude Pettit
Portales, New Mexico

    *Plaintiff pro se*

Patricia A. Madrid
  Attorney General of New Mexico
David J. Tourek
David Thomson
  Assistant Attorneys General
Albuquerque, New Mexico

    *Attorneys for the Defendant*

---

[7] Because Pettit's Complaint is dismissed, his outstanding motion, Verified Motion for Certification of Class and Request for Appointment of Class Counsel, is dismissed as moot.